In the Matter of Louis MILBURN, Appellant, v J. KEVIN McNIFF, as Deputy Commissioner of the New York State Department of Correctional Services, Respondent. — In a proceeding pursuant to CPLR article 78, *inter alia,* to declare provisions of the respondent's inmate correspondence program unconstitutional, petitioner appeals from a judgment of the Supreme Court, Dutchess County, dated November 9, 1979, which dismissed the petition. Judgment reversed, on the law, without costs or disbursements, the proceeding is converted into an action for a declaratory judgment (see CPLR 103, subd [c]), with the petition deemed the complaint, it is declared that respondent's policy which requires inmates who wish to communicate with persons not on their approved correspondence lists, to forward to the prospective correspondent a "request to correspond form" unaccompanied by any other message is unconstitutional, and the action is remitted to the Supreme Court, Dutchess County, for further proceedings consistent herewith. Respondent's policies concerning inmate correspondence are set forth in Directive No. 4422, dated June 18, 1979. In relevant part, the directive provides: "III. GENERAL CORRESPONDENCE PROCEDURES A. Definition: General Correspondence is mail between an inmate and someone other than a person approved for privileged correspondence (see Directive #4421). *** B. ·Outgoing Mail *** 2. Except for privileged correspondence, all persons to whom mail is sent by an inmate must have received prior approval for the exchange of correspondence according to the procedures contained in this directive. 3. An up-to-day list containing the names and addresses of persons approved for correspondence shall be maintained by each facility correspondence unit. The list will be referenced in checking an inmate's outgoing mail. All unauthorized correspondence will be returned to the sender. *** 5. Correspondence Requests: Form 3412 'REQUEST TO CORRESPOND, VISIT AND PLACE COLLECT TELEPHONE CALLS' will be sent by the inmate to persons (other than inmates) with whom he wishes to correspond and who have not received such authorization. No letter shall be enclosed with this request. The envelope containing the request must be unsealed to permit verification by the correspondence unit staff. 6. All general outgoing correspondence, with the exception of inmate to inmate correspondence, inmate business mail, and correspondence request mail, may be sealed by the inmate and shall not be opened or inspected, unless authorized in writing by

the Superintendent. In such cases, there must be reasonable suspicion to believe that the contents of such mail endangers or threatens the safety and security of a facility or the safety and security of another person. *** E. Business Mail — Outside Purchases All correspondence obligating an inmate's funds is considered business mail. Business mail shall be processed as general correspondence except where noted below: *** 4. Correspondence of a business nature which does not obligate an inmate's funds (e.g. correspondence to the news media ***) may be sent to persons or corporations not on the inmate's approved correspondence list. However, they must be sent unsealed and are subject to inspection. *** IV. PROCEDURES FOR SENDING AND PROCESSING CORRESPONDENCE REQUESTS A. Request to Correspond *** 2. To request general correspondence with a person (except another inmate or business requests), an inmate sends Form #3412, 'REQUEST TO CORRESPOND, RECEIVE VISITS AND PLACE COLLECT TELEPHONE CALLS,' to the addressee in an unsealed envelope without an accompanying first letter *** No other message may be included on or with the application: if a message is included, the application will be returned to the inmate. *** 3. In extenuating circumstances, an inmate may request permission from the Superintendent to send a first letter to a person whose name is not listed on his/her approved correspondence list. The Superintendent may inspect the letter before determining if it should be sent." Thus, where an inmate wishes to initiate correspondence with someone who is not on his approved correspondence list, he must first secure that person's consent by use of the "request to correspond" form. As noted in the directive, except in extenuating circumstances, no other message may be included with the application. Appellant alleged that he desired to engage in correspondence with persons whose classified ads appeared in a newspaper. He averred that in order to spark the interest of a potential correspondent, it is necessary to send a message with the request to correspond. It is further alleged that appellant's attempt to send an accompanying message with a request to correspond was rejected within the correctional facility. In *Procunier v Martinez* (416 US 395), the United States Supreme Court set forth the analysis to be employed in evaluating a prisoner's claim that his First Amendment rights are being interfered with by prison officials. The court stated (pp 413-414): "Applying the teachings of our prior decisions to the instant context, we hold that censorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important, or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests iden-

tified above." In order to justify the requirement that prospective correspondents complete a request to correspond form before the inmate is permitted to send a message to that person, the respondent must establish that this procedure furthers one of the substantial governmental interests of "security, order, and rehabilitation", and that the restriction is no greater than necessary to further that interest. At bar, respondent has offered no justification for this practice. Other prison authorities have attempted to justify a similar regulation on the grounds that either the potential correspondents may not desire to receive mail from prison inmates or that the absence of such a practice would prevent the prison officials from uncovering escape plans and detecting contraband (see, e.g., *Finney v Arkansas Bd. of Correction,* 505 F2d 194, on remand *sub nom. Finney v Hutto,* 410 F Supp 251, affd 547 F2d 740, affd 437 US 678). In the above-cited case, those grounds were found to be insufficient to justify the restriction on an inmate's ability to correspond under the analysis set forth in *Procunier v Martinez* (416 US 395, *supra).* Inasmuch as the respondent could constitutionally inspect such outgoing mail to potential correspondents (cf. *Wolff v McDonnell,* 418 US 539, 577), he is armed with the essential weapon to combat smuggling and escape plans (see *Guajardo v Estelle,* 580 F2d 748, 755). Assuming, *arguendo,* that there exists a substantial governmental interest in protecting individuals from receiving correspondence from an inmate, the respondent's policy as contained in Directive No. 4422 places a greater restriction than is necessary or essential to protect any such governmental interest. The respondent may be advised to adopt the approach suggested by the Fifth Circuit in *Guajardo v Estelle (supra,* p 755, n 4 [the sending of a post card to the prospective correspondent which simply states that the prisoner wishes to correspond with the addressee and unless objection is received within 10 days he will be permitted to do so]) or by the Eighth Circuit in *Finney v Arkansas Bd. of Correction (supra* [the use of a negative mail list, i.e., those persons who do not wish to receive correspondence from an inmate, may so notify prison officials]). In light of the fact that Special Term dismissed this action without making any factual findings, we cannot resolve appellant's claim that his rights were violated by the respondent's refusal to forward three letters that he addressed to the editor of the *Poughkeepsie Journal.* We reiterate that censorship of prisoner mail is only justified when the regulation or practice in question furthers an important or substantial governmental interest unrelated to the suppression of expression *(Procunier v Martinez, supra,* p 413). We can perceive of no substantial governmental interest that would be furthered by restricting the appellant's ability to send written correspondence to a local newspaper. Lastly, we reject the respondent's contention that the proceeding was properly dismissed as a result of plaintiff's failure to exhaust the remedy provided by section 139 of the Correction Law relating to an inmate grievance procedure. Assuming, without deciding, that the appellant's claim falls within the ambit of that section, we note that the rule of exhaustion of administrative remedies need not be followed when an agency's action is challenged as being either unconstitutional or wholly beyond its grant of power (see *Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57). Accordingly, the matter is remitted to the Supreme Court, Dutchess County, for further proceedings consistent herewith. Damiani, J. P., Titone, Mangano and Gibbons, JJ., concur.