■ In the Matter of Louis Milburn, Respondent, v J. Kevin McNiff, as Deputy Commissioner of the New York State Department of Correctional Services, Appellant. — In an action, *inter alia,* to declare certain provisions and practices of the appellant's inmate correspondence program unconstitutional, the appeal is from an order of the Supreme Court, Dutchess County (Martin, J.), dated August 4, 1981, which, *inter alia,* prohibited appellant "from requiring inmate correspondence to the news media to be processed under greater restrictions pursuant to Departmental Directive 4422 (III) than other general, non-privileged correspondence". Matter remitted to Special Term for further proceedings consistent herewith, and, in the interim, appeal held in abeyance. Special Term is to file its report with all convenient speed. The instant suit was originally commenced as a proceeding pursuant to CPLR article 78. However, on a prior appeal this court converted it into an action for a declaratory judgment (see *Matter of Milburn v McNiff,* 81 AD2d 587). The plaintiff is an inmate under the jurisdiction of the New York State Department of Correctional Services (the department). He claims that three letters which he attempted to send to the editor of the *Poughkeepsie Journal* were returned to him by the correspondence department of the Green Haven Correctional Facility, where he was then incarcerated. The envelopes have pencil notations on them, which appear to indicate that the letters were returned, respectively, for containing false news, for containing material that should be submitted to a facility grievance committee rather than to a newspaper, and for containing material which could upset facility calm. The letters once contained in those envelopes have not been reproduced as part of the record on this appeal although there is an indication that they were part of the evidence before Special Term. Plaintiff contended that his constitutional rights were violated by the department's refusal to forward the three letters to the *Poughkeepsie Journal.* In opposing that contention the defendant proffered an affidavit from the correction officer in charge of the correspondence department at Green Haven, which stated, in pertinent part, as follows: "As Officer in charge of the Correspondence Department at Green Haven Correctional Facility, I have spoken to the Correspondence workers concerning Louis Milburn's allegation of his letters being returned to him bearing written comments on the envelope that the contents of the letter was [*sic*] unacceptable for mailing. The practice of this department concerning inspection of business mail is to make sure that no one is ordering merchandise without paying in advance. No billing is allowed. This is in accordance with Directive #4422, Sec. E-4. The only reason Milburn's letter would have been returned to him by this department would be because he has used his free postage for the week or he had not left the

envelope unsealed. Tags (see attached sample) would be attached to the envelope, or same written in pencil. To the best of my knowledge, no mail has ever been returned because of the contents of the letter." When this matter was previously before us (*Matter of Milburn v McNiff,* 81 AD2d 587, *supra*), we declared unconstitutional a policy of the department requiring inmates "who wish to communicate with persons not on their approved correspondence lists, to forward to the prospective correspondent a 'request to correspond form' unaccompanied by any other message" (*Matter of Milburn v McNiff, supra,* p 587). We found that this requirement "places a greater restriction than is necessary or essential to protect any * * * governmental interest" in protecting individuals from receiving unwanted correspondence from an inmate (*Matter of Milburn v McNiff, supra,* p 589). However, because of the absence of findings at Special Term on the claim pertaining to the letters to the *Poughkeepsie Journal,* it was impossible to resolve the issues raised thereby and, accordingly, we remitted the matter for a hearing. No hearing was held. The colloquy at Special Term, between the attorneys and the court, reveals confusion and disagreement as to the purpose of the remittal. After examining only the envelopes, the court held that "[t]here is no issue of fact for the court to hold a hearing on. An envelope addressed to an editor of the newspaper is not subject to censorship". An order was subsequently entered, which, *inter alia,* prohibited defendant "from requiring inmate correspondence to the news media to be processed under greater restrictions * * * than other general, non-privileged correspondence which thereby unlawfully subjects it to restrictions of inspection and censorship". We again remit for a factual hearing. Until the receipt of Special Term's report the appeal will be held in abeyance. Because of the confusion exhibited by the parties upon the prior remittal, and to prevent further misinterpretation of what is required as a result of the hearing, further discussion is warranted. This action necessarily involves review of the department's procedures regarding inmate mail. If, in fact, plaintiff's letters were returned to him, then the propriety of the censorship must be addressed, which, in turn, draws into question the department's practices and directives, and the issues of, if, when, and under what circumstances, inspection and censorship are permissible. That is, on the remittal, not only must evidence be taken and findings made with respect to whether petitioner's letters were returned to him, and, if so, why they were returned, but the directives of the defendant and the practices of inspection, review and censorship, if existent, must also be examined. According to Directive No. 4422 of the department, dated June 18, 1979, "[a]ll general outgoing correspondence [with certain exceptions not relevant here] may be sealed by the inmate and shall not be opened or inspected, unless authorized in writing by the Superintendent. In such cases, there must be reasonable suspicion to believe that the contents of such mail endangers or threatens the safety and security of a facility or the safety and security of another person". The department does not classify a letter to the news media under "General Correspondence". Instead, whether the correspondence obligates an inmate's funds or not, a letter to the media is considered business mail. Business mail must be "unsealed and [is] subject to inspection" (Directive No. 4422, § III, subd E). We emphatically reassert what, at this late date, should hardly need repeating: "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements" (*Procunier v Martinez,* 416 US 396, 413). Because of this policy, we previously stated that we could "perceive of no substantial governmental interest that would be furthered by restricting the [plaintiff's] ability to send written correspondence to a local newspaper" (*Matter of Milburn v McNiff,* 81 AD2d 587, 589, *supra*). A letter from an inmate

to an editor or reporter of a newspaper concerning prison conditions or other matters of public interest should not be impeded in any manner whatsoever. On the other hand, as noted by defendant's counsel during the colloquy at Special Term, some correspondence to a newspaper or other news media might be of a different sort. An inmate's subscription request and the response by an inmate to a classified advertisement for the sale of a product are items which conceivably may properly be subject to some sort of supervision. As noted in the affidavit from the correction officer, the department is concerned that inmates do not order merchandise without paying in advance. Preventing prisoners from running up what are essentially uncollectable debts is certainly a "substantial governmental interest" (*Matter of Milburn v McNiff, supra,* p 589). There may be other interests at stake as well and defendant should not be foreclosed from establishing a record pertaining thereto. The examples of a subscription request or the placement of an order in response to an advertisement illustrate that perhaps the department's classification of letters to news media under the category of business correspondence is not necessarily irrational. On the other hand, "limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved" (*Procunier v Martinez,* 416 US 396, 413, *supra*). We are not convinced that subjecting all correspondence addressed to the news media to inspection is a measure that is necessary or essential. The possibility of utilizing one set of procedures for processing correspondence truly of a business nature and another for correspondence pertaining to matters in the public interest should be explored on remittal. There is another type of correspondence, consideration of which should be explored in detail at the hearing. For example, "[t]ransmitting unread mail to supposed members of the press could be used as a subterfuge for discussing illegal activities" (*Taylor v Sterrett,* 532 F2d 462, 482). Similarly, inflammatory letters could return to the prison through the media resulting in a strike, or riot, or other disturbance (see *Nolan v Fitzpatrick,* 451 F2d 545). Without an amplified record, we are not in a position to determine how such correspondence should be monitored and/or controlled. Perhaps, as implicitly held by Special Term on the prior remittal, inspection of correspondence should only be allowed where there is a reasonable suspicion of illegal or improper activity (cf. *Ramos v Lamm,* 639 F2d 559, 582). On the other hand, perhaps the standard of reasonable suspicion is an inadequate protection of an inmate's First Amendment rights, and a probable cause standard should be required (see, e.g., *Guajardo v Estelle,* 580 F2d 748, 759). An amplified record might support the conclusion that neither of those standards is adequate, or that they, in fact, go too far. Perhaps a system of spot checking would be appropriate. Protective measures concomitant to any inspection procedure might also be warranted. For example, whether a warrant should be required and whether the inmate should be allowed to be present during an inspection are matters for exploration and review (see *Wolff v McDonnell,* 418 US 539, 576-577; *Ramos v Lamm, supra; Guajardo v Estelle, supra*). On remittal, the letters and the envelopes should be introduced into evidence and testimony should be taken and findings made with respect to the transmission of those letters and the reason for their return to plaintiff. The department's directives, procedures and practices with respect to inspection and censorship of inmate mail should be examined, and both sides should be permitted to present testimony as to the governmental interests involved and the appropriate measures to be taken to further those interests. Special Term's report should contain both its factual findings and its legal conclusions. Gibbons, J. P., Thompson, Weinstein and Rubin, JJ., concur.