■ In the Matter of Louis MILBURN, Respondent, v J. KEVIN McNIFF, as Deputy Commissioner of the New York State Department of Correctional Services, Appellant. — In an action, *inter alia,* to declare certain provisions and practices of the appellant's inmate correspondence program unconstitutional, the appeal is from an order of the Supreme Court, Dutchess County (Martin, J.), dated August 4, 1981, which, among other things, prohibited appellant "from requiring inmate correspondence to the news media to be processed under greater restrictions pursuant to Departmental Directive 4422 (III) than other general, non-privileged correspondence". By order dated January 17, 1983, we remitted the matter to Special Term for a hearing and held the appeal in abeyance in the interim (*see, Matter of Milburn v McNiff,* 91 AD2d 1024). Special Term (Braatz, J.), has now complied.

Order modified, on the law and the facts, so as to permit the appellant to stamp outgoing sealed correspondence to the news media with a disclaimer consistent herewith. As so modified, order affirmed, without costs or disbursements.

The instant suit was originally commenced as a proceeding pursuant to CPLR article 78. However, on a prior appeal this court converted it into an action for a declaratory judgment (*see, Matter of Milburn v McNiff,* 81 AD2d 587). We declared unconstitutional a policy of the New York State Department of Correctional Services (the department) requiring inmates "who wish to communicate with persons not on their approved correspondence lists, to forward to the prospective correspondent a 're-quest to correspond form' unaccompanied by any other message" (*Matter of Milburn v McNiff, supra*). However, regarding a second claim advanced by the plaintiff, we found the record insufficient to make a determination and twice remitted the matter for a hearing (*Matter of Milburn v McNiff,* 81 AD2d 587, *supra; Matter of Milburn v McNiff,* 91 AD2d 1024, *supra*). The record of a hearing conducted at Special Term (Braatz, J.) is now before us.

The plaintiff is an inmate under the jurisdiction of the department. He established that three letters which he attempted to

send to the editor of the *Poughkeepsie Journal* were returned to him by the correspondence department of the Green Haven Correctional Facility, where he was then incarcerated. The envelopes have pencil notations on them which indicate that the letters were returned, respectively, for containing false news, for containing material that should be submitted to a facility grievance committee rather than to a newspaper, and for containing material which could upset facility calm. The letters are now before us, and we find they contain no more than "unflattering * * * unwelcome opinions or factually inaccurate statements", which prison officials may not eliminate by censorship (*Procunier v Martinez,* 416 US 396, 413).

The censorship was practiced by the department pursuant to its Directive No. 4422, dated June 18, 1979. The directive stated in part that "[a]ll general outgoing correspondence [with certain exception not relevant here] may be sealed by the inmate and shall not be opened or inspected, unless authorized in writing by the Superintendent. In such cases, there must be reasonable suspicion to believe that the contents of such mail endangers or threatens the safety and security of a facility or the safety and security of another person" (Directive No. 4422 § III [B] [2]). The department does not classify a letter to the news media under "General Correspondence". Instead, whether the correspondence obligates an inmate's funds or not, a letter to the media is considered business mail. Business mail must be "unsealed and [is] subject to inspection" (Directive No. 4422 § III [E]).

When this matter was previously before us we noted that " 'limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved' " (*Matter of Milburn v McNiff, supra,* p 1026, quoting from *Procunier v Martinez,* 416 US 396, 413, *supra*). We identified a substantial governmental interest in "[p]reventing prisoners from running up what are essentially uncollectable debts" (*Matter of Milburn v McNiff, supra,* p 1026). However, we stated that we were "not convinced that subjecting all correspondence addressed to the news media to inspection is a measure that is necessary or essential" (*Matter of Milburn v McNiff, supra,* p 1026). Accordingly, we directed that both parties should be permitted on remittal to present testimony as to any additional governmental interests involved and the appropriate, i.e., least restrictive, measures to be taken to further those interests.

On remittal, the director of the State-wide inmate correspondence program testified that there was an "ongoing" problem with inmates ordering merchandise or services without having

the funds to make payment. Business mail must be left unsealed and is subject to inspection in order to prevent such credit purchases, referred to as obligating an inmate's funds. He also identified additional interests which were served by inspection. Department employees were trained to determine whether an outgoing item of mail is obscene. Inspection also enabled detection of inmate advertisements for pen pals. Such advertising obligates an inmate's funds and also violates the general correspondence rules which then required that a request to correspond form must be sent before a correspondent is placed upon an approved list. The director testified that the bulk of mail processed in State facilities is general correspondence which goes out sealed and is not inspected.

An additional witness, who inspects mail for the department, testified that unsealed mail is also inspected for "anything that may be considered contraband or a security risk" and for "kited out" letters, i.e., mail enclosed for forwarding by the addressee.

We address each of these stated governmental concerns in turn. First, we take notice that Directive No. 4422 has been revised to eliminate prior approval for general correspondents. Accordingly, business mail will not be a likely vehicle for "kiting out" as "[i]nmates who may correspond without prior approval and with an unlimited number of persons have no reason to seek surreptitious forwarding" (*Guajardo v Estelle,* 580 F2d 748, 759). Similarly, objection to pen pal advertisements on the ground that they circumvent prior approval requirements is no longer supportable.

We next address the stated purposes of detecting contraband, obscenity and security risks. These concerns apply to all mail; indeed such abuses appear more likely to occur in personal or general mail than in business mail. The selection of business mail only to inspect for such abuses, while the vast bulk of general mail goes uninspected, strikes us as irrational. Accordingly we hold that the routine inspection of business correspondence, including media mail, for the achievement of the aforementioned purposes, is unwarranted in the absence of similar restrictions of general mail. To be valid the challenged interference must substantially further plausible interests "in a rational manner" (*Davidson v Scully,* 694 F2d 50, 54; *Wolfish v Levi,* 573 F2d 118, 130, *revd in part on other grounds sub nom. Bell v Wolfish,* 441 US 520).

In our view, the only governmental interest proffered by the department which is furthered in a rational manner by the inspection of business mail is preventing the obligation of inmate funds. However, the department has not successfully demonstrated that alternative methods of eliminating the problem

posed by mail addressed to the media are unavailable. Because the record is silent in this regard, we suggest an alternative method which will satisfy this governmental interest without impinging upon the inmates' 1st Amendment rights.

Upon examination of Directive No. 4422 § III (B) (5) and the envelopes contained in the record, we note that it is not immediately apparent that the correspondence therein emanates from a prison. Accordingly, and since it is highly unlikely that a publisher will knowingly extend credit to one who has no normal source of income and is therefore a credit risk, the problem of inmates obligating their funds for the purchase of books, subscriptions, newspaper advertisements and the like through media mail may be substantially avoided by alerting the addressee that the mail originates from a prisoner. A disclaimer could be stamped on all outgoing correspondence addressed to the media to the effect that credit purchases by prison inmates are unauthorized and are in violation of New York State Department of Correctional Services regulations.

Since the department's practice of routinely inspecting all outgoing mail addressed to the news media is not essential to achieve its only legitimate purpose, we hold that it cannot be sustained. Gibbons, J. P., Thompson, Weinstein and Rubin, JJ., concur.