OPINION OF THE COURT
Alexander, J.
This appeal involves a challenge to the constitutionality of certain regulations of the Department of Correctional Services governing inmate correspondence. The regulations — requiring that certain correspondence be submitted for mailing unsealed and subject to inspection, and that no material be included in an outgoing envelope if not specifically intended for the addressee — are said to impermissibly infringe upon the inmates’ freedom of expression.
Petitioner is an inmate at Green Haven Correctional Facility. On September 17, 1985, he submitted for mailing a sealed letter addressed to Time Life Books. The letter was returned to him by the prison correspondence department with a handwritten notation "Do not seal”. On November 8, 1985, petitioner submitted a letter addressed to Ms. Sheela Wood, and attached to the letter a disbursement form requesting that $1.50 be withdrawn from his inmate account and be made payable to Ms. Wood. This sum represented the fee charged by Ms. Wood for forwarding a letter to a person she had located who was interested in initiating pen pal correspondence. Petitioner did not seal the letter to Ms. Wood, but enclosed in her envelope a sealed letter intended for the potential correspondent. The envelope, its contents and attached form were returned to petitioner with a note indicating that the use of such a service was prohibited. In December 1985, in response to an advertisement in the classified section of a newspaper, petitioner submitted a sealed letter addressed to a post-office box number in care of the Middletown Times Herald Record. This letter also was returned with a note stating that it could not be sealed.
Petitioner contested the rejection of his letters through the appropriate grievance procedure. With respect to the first letter — addressed to Time Life Books — the administrative ba *403 sis advanced for rejection by respondent, Department of Correctional Services, was that it violated 7 NYCRR 720.3 (e) (4), which provided, at the time, that all mail addressed to a business entity must be submitted unsealed and is subject to inspection.[1] Respondent’s ultimate reason for rejecting the second letter — addressed to Ms. Wood — was that it violated 7 NYCRR 720.3 (b) (17), which states: "An inmate shall not include any written material in outgoing mail not specifically intended for the addressee identified on the exterior of the envelope * * * This practice, sometimes known as 'kiting’, may be the basis for disciplinary action.”[2] Finally, the third letter — addressed to a post-office box in care of the Middle-town Times Herald Record — was rejected on administrative review because it was addressed to a box number located in the classified department of a newspaper, and therefore was regarded as business mail required to be submitted unsealed.[3]
Petitioner instituted an article 78 proceeding challenging the constitutionality of the two regulations relied upon by respondent in rejecting the attempted correspondence. The thrust of petitioner’s claim is that the regulations impinge upon his First Amendment rights under the Federal and State Constitutions in that they chill speech by subjecting business mail to inspection, and foreclose all speech to certain individu *404 als by effectively frustrating an inmate’s ability to respond to "personals” advertisements appearing in newspapers or magazines, or to engage the services of those who organize the establishment of pen pal correspondence.
 Supreme Court dismissed the petition, finding any intrusion on the speech of inmates to be minimal and, in any event, justified by respondent’s legitimate interests in security, order and rehabilitation. After converting the proceeding to an action for declaratory judgment, the Appellate Division affirmed, holding that petitioner had "failed to establish that he has a 1st Amendment right to engage in business correspondence” (125 AD2d, at 572), that the regulations at issue are not content restrictions, and that petitioner’s First Amendment rights were therefore not implicated. That court concluded that the regulations were rational and furthered legitimate government objectives. We conclude, however, that the challenged regulations do implicate First Amendment interests, but that under the appropriate standard of review, the regulations do not unconstitutionally abridge petitioner’s right to freedom of expression. The order of the Appellate Division should therefore be modified accordingly.
Initially, we reaffirm the settled principle that while incarceration results in the withdrawal or limitation of many rights, inmates retain those rights guaranteed by the First Amendment, and may exercise them to the extent it would not be inconsistent with their status as prisoners and with the legitimate restrictions imposed by confinement (Turner v Safley, 482 US —, 107 S Ct 2254; Pell v Procunier, 417 US 817; Matter of Doe v Coughlin, 71 NY2d 48; Matter of Rivera v Smith, 63 NY2d 501). The conclusion of the Appellate Division that the regulations at issue do not implicate any First Amendment interests appears to be predicated upon the assumption that all speech addressed to a business entity is of a business or commercial nature not entitled to the benefit of First Amendment protection. It may no longer be disputed, however, that commercial speech — although not vested with full First Amendment stature — is entitled to a certain degree of protection (see, Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557, 561-562; Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748; Matter of von Wiegen, 63 NY2d 163, 170). More importantly, however, it is evident that not all letters addressed to a business enterprise necessarily contain only commercial speech. It is quite possible, as petitioner argues, that an inmate might write to a business *405 entity concerning issues of a substantially political nature such as discrimination or environmental policies. Such speech unquestionably would be protected under the First Amendment (see, Buckley v Valeo, 424 US 1, 14; Roth v United States, 354 US 476, 484). A regulation requiring business mail to be submitted unsealed and subject to inspection, although not content-based (see, e.g., Wolff v McDonnell, 418 US 539, 576 [freedom from censorship not equivalent to freedom from inspection]), nonetheless may sufficiently chill free and open expression so as to implicate First Amendment concerns (see, Procunier v Martinez, 416 US 396, 423 [Marshall, J., concurring] [inmate’s free and open expression restrained by knowledge that every word may be read by jailors]). Although content-neutral, respondent’s prohibition on "kiting” restricts the manner of speech and therefore also implicates First Amendment interests (see, Heffron v International Socy. for Krishna Consciousness, 452 US 640; Consolidated Edison Co. v Public Serv. Commn., 447 US 530, 535; see generally, 3 Rotunda, Nowak and Young, Constitutional Law, Substance and Procedure § 20.47 [time, place, manner restraints]).
The standard for assessing the validity of prison regulations that infringe on inmates’ constitutional rights has been articulated by the Supreme Court as follows: "when a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests” (Turner v Safley, 482 US —, 107 S Ct 2254, 2261, supra; see also, O’Lone v Estate of Shabazz, 482 US —, 107 S Ct 2400; Matter of Doe v Coughlin, 71 NY2d 48, supra).[4] Factors identified as particularly pertinent to a determination of validity include: whether there is a logical connection between the prison regulation and the institution’s interest put forward to justify it; whether alternative means of exercising the right remain open to the inmates; whether accommodation of the asserted constitutional right will adversely impact on the prison population, correction employees, or on the allocation of prison resources; and whether there are alternatives available to prison authorities that adequately address the concerns advanced (see, Turner v Safley, 482 US —, 107 S Ct 2254, 2262, supra; O’Lone v Estate of Shabazz, 482 US —, 107 S Ct 2400, supra). With respect to this last factor, the *406 Supreme Court has emphasized that the alternative selected need not be the "least restrictive alternative”, for "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant’s constitutional complaint” (Turner v Safley, 482 US —, 107 S Ct 2254, 2262, supra). Similarly, a State constitutional challenge to prison regulations requires a balancing of the competing interests at stake: the importance of the right asserted and the extent of the infringement are weighed against the institutional needs and objectives being promoted (see, Matter of Rivera v Smith, 63 NY2d 501, 511, supra; Cooper v Morin, 49 NY2d 69, 79; see, Matter of Doe v Coughlin, 71 NY2d 48, 68 [Alexander, J., dissenting], supra). Finally, in reaching the appropriate balance of factors under either the Federal or State approach, a measure of judicial deference is to be accorded the judgment of correction officials (Pell v Procunier, 417 US 817, 827, supra; People v Lewis, 68 NY2d 923; Matter of Rivera v Smith, 63 NY2d 501, 512-513, supra).
Applying these principles, we conclude that the regulations at issue pass constitutional scrutiny under both Federal and State Constitutions.
The challenged restrictions are to be viewed in light of the other regulations governing the inmate correspondence program, rather than in isolation (see, Pell v Procunier, 417 US 817, 823, supra). Under respondent’s program, inmates may submit personal mail addressed to identified individuals sealed, and such mail is not subject to opening and inspection without specific authorization from the Superintendent upon a finding of a reason to believe that some regulation has been violated (Directive No. 4422 § III [E]). Unlike personal mail, however, correspondence addressed to a business — other than the media under the amended regulations (see, n 1, supra)— must be submitted for mailing unsealed and is subject to inspection. The stated justification for this infringement on business mail is to enable correction officials to prevent inmates from ordering merchandise or services on credit. Indeed, any business mail that obligates an inmate’s funds must receive prior approval (7 NYCRR 720.3 [e] [1]; see, Rodriguez v James, 823 F2d 8, 10). Concomitantly, the regulation seeks to prevent inmates from committing fraud on businesses (see, Rodriguez v James, 823 F2d 8, 12, supra).
Recognizing that an "inmate who seeks to defraud a business is engaging in conduct that is both illegal and at odds *407 with the rehabilitative goals of incarceration, [and that an] inmate who amasses large debts has not learned the financial responsibility that is essential for complete rehabilitation”, petitioner does not dispute that respondent has a substantial interest in preventing credit purchases (Rodriguez v James, 823 F2d 8, 12, supra; see also, Matter of Milburn v McNiff, 108 AD2d 860, 861, appeal discontinued 65 NY2d 812).[5] Rather, petitioner argues that there is a less intrusive method of achieving this valid objective and presses us to adopt the alternative, suggested by the Appellate Division in Milburn, that the respondent simply stamp outgoing business mail with a disclaimer that credit purchases by inmates are illegal (108 AD2d, at 863, supra). While such a disclaimer presumably would discourage most merchants from extending credit to inmates, it fails to vindicate all of the interests asserted by respondent for the inspection requirement.
Initially, the disclaimer places the onus on the merchant to thwart illegal credit purchases. Yet, respondent has no guarantee that merchants — whose mail may be opened and screened in various ways — actually see the envelope. Hence, there is a greater risk that, despite the disclaimer, credit purchases may be extended. Even if the stamp were to deter the incidence of credit purchases with the same success as does inspection, attempts by inmates either to defraud or to spend beyond their means would go undetected. Thus, the proposed disclaimer would not satisfy respondent’s additional interest in knowing of the attempts. Finally, the disclaimer stamp may result in the unnecessary stigmatization of all business mail — even that containing political speech — and the attendant risk that merchants will presume that an envelope stamped with such a disclaimer contains an offer to purchase on credit and discard it.
Petitioner also contends that the amended regulation providing for a media exception5 [6] allows credit purchases to be made surreptitiously from media entities, and is thus an indication that the justification for the inspection requirement *408 is suspect. We view the amendment, however, as an attempt to circumscribe the intrusive effect of the inspection requirement and to accommodate the inmates’ freedom of expression by affording an alternative means of exercising that right (see, Jones v North Carolina Prisoners’ Union, 433 US 119, 131). Although the inspection requirement may chill in some measure an inmate’s freedom to express political views to business enterprises other than the media, the business mail regulation operates in a "neutral fashion, without regard to the content of the expression” (Turner v Safley, 482 US —, 107 S Ct 2254, 2262, supra; Pell v Procunier, 417 US 817, 828, supra; Bell v Wolfish, 441 US 520, 551). If the submitted letter does not offer to purchase on credit or otherwise impermissibly obligate an inmate’s funds, it is dispatched. We conclude that respondent’s business regulation as amended is reasonably related to legitimate penological purposes and is therefore valid.
The asserted rationale for the prohibition on "kiting” mail (7 NYCRR 720.3 [b] [17]) is that it serves to enforce other regulations that prohibit or restrict correspondence with certain individuals. For example, inmates are not permitted to write to those who have requested that they not receive any mail from inmates (7 NYCRR 720.3 [b] [l]-[4]), and prior approval is required to correspond with unrelated persons under the age of 18 years, persons on probation or under parole supervision, and persons confined in other correctional facilities (7 NYCRR 720.3 [b] [5]). To allow inmates to "kite” out mail would enable them to conduct unauthorized correspondence with such individuals. Thus, the "kiting” regulation simply requires that any letter in the envelope be intended for the addressee. Petitioner’s complaint that this precludes him from answering "personals” advertisements that request a response to be sent in care of the newspaper or magazine, and from engaging the service of pen pal correspondence programs, is unavailing inasmuch as these practices are precisely what respondent seeks to prevent — unauthorized communication with unidentified individuals. That inmates may circumvent this regulation by resorting to sealed mail privileges does not establish that the prohibition against "kiting” is unreasonable. Indeed, if respondent has a reasonable belief that an inmate is "kiting” mail through sealed general correspondence, the mail may be opened and inspected. Respondent has asserted a legitimate penological goal in requiring that inmates correspond with identified individuals (Turner v Safley, 482 US —, 107 S Ct 2254, 2263-2264, supra; Jones v North *409 Carolina Prisoners’ Union, 433 US 119, supra). We conclude that the "kiting” regulation is reasonably related to this legitimate penological purpose.
Accordingly, the order of the Appellate Division should be modified to the extent of declaring that the challenged regulations do implicate First Amendment interests, but that under the appropriate standard of review, the regulations do not unconstitutionally abridge petitioner’s right to freedom of expression, and as so modified, affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. During this litigation, the regulations were amended to provide that mail addressed to the media may be submitted for mailing sealed (7 NYCRR 720.3 [e] [5]), and that all business mail, "except business mail addressed to the media” must be submitted by the inmate unsealed (7 NYCRR 720.3 [e] [4]). Respondent concedes that under the amended regulation, petitioner’s letter to Time Life Books would fall within the so-called "media exception” and would be dispatched sealed. Thus, petitioner’s grievance with respect to this letter has been rendered moot. However, inasmuch as respondent has invoked the business mail regulation to sustain its rejection of petitioner’s third letter — to a post-office box in care of the Middletown Times Herald Record — we address petitioner’s constitutional challenge to that regulation.

. Respondent originally cited 7 NYCRR 720.3 (b) (13), which prohibits an inmate’s use of correspondence to solicit for money, services or goods. Final administrative review, however, relied on section 720.3 (b) (17).

. The initial administrative determination was that the letter was addressed to a box number without a specifically identified addressee in violation of 7 NYCRR 720.3 (b) (15), which provides that "[i]nmates shall not submit correspondence to be sent to a post-office box without a specifically identified addressee; the addressee (either a person or a business) shall be clearly identified”. Under the amended regulations (see, n 1), this letter nevertheless would be required to be submitted unsealed in accordance with 7 NYCRR 720.3 (e) (6), which states that "mail addressed to a box number in care of a media entity shall not be considered to be mail addressed to the media”.

. We reject petitioner’s urging that the heightened standard articulated in Procunier v Martinez (416 US 396) is applicable here. Unlike the regulations challenged on this appeal, Martinez involved regulations authorizing content-based mail censorship.

. In Milburn — decided prior to the amendment of the regulations and Turner v Safley (482 US —, 107 S Ct 2254) — the Appellate Division, applying the Procunier v Martinez standard, held that respondent’s regulation requiring all business mail to be submitted and subject to inspection was not the least restrictive means of furthering the governmental interest of preventing the obligation of inmate funds (Matter of Milburn v McNiff, 108 AD2d 860, 862, appeal discontinued 65 NY2d 812).

. We note that "media” is nowhere defined in the regulations.