**Donald THERIAULT, Plaintiff,**

v.

**Martin MAGNUSSON, Defendant.**

**No. 88–0233–P.**

United States District Court,
D. Maine.

Oct. 28, 1988.

Seth Berne, Portland, Me., for Maine Civil Liberties Union, Portland, Me., for plaintiff.

Diane Sleek, Asst. Atty. Gen., Augusta, Me., for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

GENE CARTER, District Judge.

### I. INTRODUCTION

This case comes before the Court on Plaintiff's Motion for Preliminary Injunction, filed on July 27, 1988. Plaintiff Donald Theriault, an inmate at the Maine State Prison (the "Prison"), brings this motion pursuant to Rule 65 of the Federal Rules of Civil Procedure and the First and Fourteenth Amendments to the United States Constitution, to enjoin the Prison from preventing inmates from sending mail outside the Prison in plain, unmarked envelopes. In accordance with the analysis herein, the Court hereby denies this motion.

### II. FACTUAL BACKGROUND

The Maine State Prison requires inmates to use envelopes provided by the Prison for all outgoing correspondence. The envelopes provided bear a legend embossed or stamped plainly on the outside, in language that is the same as or substantially similar to the following:

> This correspondence is forwarded from the Maine State Prison. The contents have not been evaluated and the Maine State Prison is not responsible for the substance or content of the enclosed communication.

The Prison adopted this policy in February 1987 primarily in response to numerous complaints from merchants involving credit card use by inmates. Merchants complained that Prison inmates were ordering merchandise by mail on credit without intending to pay, and investigations revealed that Prison inmates were making unauthorized use of stolen credit card account numbers by mail.

These credit card purchases were causing continuing problems for Prison officials. The Prison has long prohibited inmates from receiving merchandise ordered with a credit card, regardless of whether it was ordered from within or without the Prison or whether the inmate intends to and can pay for the merchandise.[1] In addition to searching for contraband, Prison officials must open and inspect all packages received by the Prison to determine, *inter alia*, if the contents were purchased by credit card. When the Prison receives a package which was ordered by use of a credit card for an inmate, the inmate has thirty days to choose one of three options. The inmate can either mail the package back to the sender or elsewhere, can arrange for a visitor to pick up the package during an on-premises visit, or can permit the Prison to dispose of the package. If the inmate has not acted in thirty days, the Prison disposes of the package. The Prison instituted this policy to stop unauthorized and otherwise improper credit card purchases as well as to diminish the number of packages the Prison must process. This policy alone, however, failed to stem the flow of such packages and placed a huge burden on Prison personnel and storage space.

In response, the Prison instituted the policy requiring all outgoing mail to bear the above legend in order to alert correspondents to mail from inmates as well as to deter the inmates from making fraudulent credit card purchases by mail. The record before the Court shows that the policy has been highly successful. From two to three complaints received weekly by the Prison before the policy was instituted, the flow of complaints has diminished to approximately one per month. The Prison detective assigned to investigate such complaints, who

---

**1.** This policy and practice is not challenged herein.

before institution of the policy spent two to three days per week investigating mail-related complaints, testified that he now needs to spend very little time conducting these investigations. The new policy has reduced the number of packages received by the Prison for inmates, freeing Prison resources and personnel for other purposes. The policy has also reduced the number of complaints received by the Prison concerning threatening and harassing mail sent by inmates.

Plaintiff seeks to enjoin the Prison from requiring all outgoing mail to bear the above legend, claiming injury to his freedoms of speech and association guaranteed by the First Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment. Plaintiff argues that the use of the label chosen by the Prison adversely affects his ability to communicate. Plaintiff asserts that his family has requested that he not correspond with them because the legend on the envelope "lets everyone know he is in prison." He alleges that his son is harassed by other children who see or learn about the statements and thereby learn that his father is in prison. Plaintiff thus argues that the legend interferes with his First Amendment rights of free speech and association by interfering generally with his ability to communicate with the world outside the Maine State Prison.

## III. ANALYSIS

In addressing this motion for preliminary injunction, *Stanton by Stanton v. Brunswick School Department*, 577 F.Supp. 1560 (D.Me.1984), directs the Court's inquiry. *Stanton* sets out four criteria that the moving party must meet in order to gain a preliminary injunction: there must be irreparable injury to the moving party if the injunction is not granted; the injury to the moving party must outweigh any harm that defendant will suffer by granting of the injunction; there must be substantial likelihood of success on the merits; and granting the injunction cannot adversely affect the public interest. *Id.* at 1560, citing *UV Industries, Inc. v. Posner*, 466 F.Supp. 1251 (D.Me.1979). Failure to meet any one of the four criteria will result in a denial of the preliminary injunction.

On the record presently before the Court, Plaintiff has failed to show that there is a substantial likelihood of success on the merits. In assessing whether Plaintiff is likely to succeed on his claim of a First Amendment violation, the Court must address the specific issues raised by the pleading posture of the case. *Stanton*, 577 F.Supp. at 1569. The United States Supreme Court's opinion in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), outlines the framework for considering whether a prison regulation impinges upon an inmate's constitutional rights. The factors to be considered are: (1) the existence of a rational connection between the regulation and the legitimate government interest it addresses; (2) the existence of alternative means by which the inmates can exercise the contested constitutional right; (3) the impact that accommodating the contested constitutional right will have upon other inmates as well as prison guards and other resources; and (4) the existence of ready alternatives to the prison regulation.

(1) *Rational relationship.* There is a clear and logical connection between the Prison mail policy and the end it was intended to achieve. The Prison was receiving complaints from merchants seeking payment for goods ordered by mail on credit, often involving unauthorized use of credit card numbers, as well as complaints of harassment and abuse through mail sent to members of the public from Prison inmates. By mandating that each letter sent by inmates bear the legend on the envelope, the Prison intends to alert the recipient to the source of the correspondence. Merchants can thus factor this information into their decision about whether or not to engage in a credit sale transaction with an inmate, and other parties can take steps to protect themselves similarly from any potential harassment or abuse. In addition, knowledge that all outgoing correspondence must bear this legend is intended to deter inmates from ordering merchandise by credit card as well as from sending

harassing or threatening correspondence. The success of this policy in reducing the complaints to the Prison demonstrates the logical connection between the policy and the problem it addresses.

(2) *Alternative means of exercising the constitutional right.* As a factual matter, the Prison message stamped on outgoing inmate mail does not have a severe intrusive effect on Plaintiff's right to communicate freely. The Prison policy challenged here does not prevent Plaintiff from writing and sending letters. Inmates are free to correspond by mail subject only to the requirement that the correspondence bear the prescribed legend.

Assuming *arguendo,* however, that the Prison policy that prevents Plaintiff from using unmarked envelopes intrudes upon his right to communicate freely, Plaintiff still has sufficient alternative means of exercising his right. Plaintiff has the options of communication by marked mail, by telephone, and with personal visitors to the Prison facility. Cumulatively, these options present an alternative means of communication by which Plaintiff may exercise his First Amendment rights.

(3) *Impact on prison inmates and resources.* Accommodating Plaintiff's request and restraining the Prison from enforcing its mail regulation would have a negative impact upon the Prison, its guards, resources and inmates. It requires no leap in logic to conclude that permitting inmates to resume sending letters in unmarked envelopes would result in an increase in the type of complaints this regulation addresses. Prison personnel and resources would once again have to be diverted to address mail-related complaints, with a corresponding depletion in Prison security, order and rehabilitation efforts.

(4) *Alternatives to contested regulation.* Finally, this Court rejects Plaintiff's proposed alternative to the Prison regulation. The Prison's stamped mail policy was chosen as the least restrictive yet most effective means to achieve the desired result. For an alternative, Plaintiff points to *Rodriguez v. James,* 823 F.2d 8 (2d Cir. 1987), in which the Court of Appeals for the Second Circuit upheld a prison policy requiring all inmate correspondence directed to businesses to be submitted unsealed for inspection. Inspection of commercial mail is intended to limit the monetary obligations assumed by inmates and to require that inmates prepay for items ordered by mail. *Id.* at 11. Without addressing such an inspection policy's constitutionality, this Court believes that inspecting the envelope's contents is more intrusive into the inmate's personal affairs than is mere stamping of the envelope. As stated in *Nachtigall v. Board of Charities and Corrections,* 590 F.Supp. 1223 (D.S.D.1984), upholding a similar regulation requiring mail sent from the state prison to be stamped with the prison name:

> *This policy is designed to protect the prisoner's free speech rights.* Here the plaintiff makes no complaint that his letters are being opened and/or censored, but rather complains about the South Dakota State Penitentiary's policy of stamping that name on the envelope.... These facts do not state a First Amendment violation. The Penitentiary did not infringe upon his right to correspond with anyone. It did not censor or refuse to deliver his mail. Therefore, this claim must fail.

590 F.Supp. at 1224 (emphasis supplied). For the Prison to open, inspect and possibly refuse to send outgoing mail would intrude much more upon Plaintiff's rights than does the chosen alternative requiring a stamped legend on the envelope. *See Lucas v. Scully,* 71 N.Y.2d 399, 526 N.Y.S.2d 927, 521 N.E.2d 1070 (1988).

In addition to concerns that it would be more intrusive, there is also substantial doubt concerning the efficacy of the *Rodriguez v. James* alternative. It is unrealistic to expect inmates to voluntarily label their business mail for inspection. Prison officials have indicated that it is very difficult to distinguish between business and personal mail based solely upon the outward appearance of the envelope. Much personal mail from inmates would inevitably be opened and inspected if the Prison were to enforce such a regulation rigorously. Any-

thing less than rigorous enforcement would result in business correspondence passing through unrecognized and uninspected. In addition, inspecting all of the letters sent daily from the prison would consume considerable Prison manpower. Requiring the Prison to commit more resources to enforcement of a less effective mail policy makes little sense.

The Court rejects as nonviable other alternatives as well. Limiting the number of packages each inmate may receive per day is easily circumvented by voluntary or coerced cooperation between inmates. The same can be said for a plan that would stamp the legend on the mail of only those inmates known to use the mail improperly. Any plan that would require the Prison to act as a bill collector for private business is entirely inappropriate. Finally, it should be noted that the language chosen by the Prison for the envelopes is content neutral. The legend neither advises the recipient how to act or respond to the letter, nor warns of ill consequences in dealing with a prison inmate. Rather, the legend is narrowly worded to alert the recipient to the source of the correspondence and the lack of its evaluation by Prison authorities. This language is sufficiently neutral to obviate the need to search for alternative language to accomplish the same policy objectives.

## IV. CONCLUSION

*Stanton* cautions that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." 577 F.Supp. at 1567, *citing Plain Dealer Publishing Co. v. Cleveland Typographical Union No. 53*, 520 F.2d 1220, 1230 (6th Cir.1975), *cert. denied*, 428 U.S. 909, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). Particularly where, as here, the relief requested is temporary in nature, the Court is unwilling to exercise this injunctive power. *Stanton*, 577 F.Supp. at 1567.

■ It is true that a Prison inmate retains those First Amendment rights that are not inconsistent with his or her status as a prisoner or with the legitimate penological objectives of the corrections system, which include internal security, rehabilitation, and deterrence of crime. *Nachtigall v. Board of Charities and Corrections*, 590 F.Supp. at 1224, *citing Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). However, the Court is unaware of any First Amendment right of free speech or association that protects a convicted and imprisoned felon currently serving his sentence from disclosure of this already public fact to others in order to address a legitimate penological interest by the least intrusive means possible. Plaintiff's conviction and subsequent sentencing are a matter of public record, and any injury to Plaintiff caused by the Prison policy in such circumstances is not of constitutional dimension. The absence of any constitutional violation on the present record requires this Court's finding, above, that there is no substantial likelihood of success on the merits.

In light of Plaintiff's failure to demonstrate a substantial likelihood of success on the merits, the motion for a preliminary injunction must be denied.

Accordingly, it is ORDERED that Plaintiff's Motion for Preliminary Injunction be, and it is hereby, DENIED.