*976 OPINION OF THE COURT
Harold J. Hughes, J.
The motion of the plaintiffs for summary judgment will be denied, and the cross motion of the defendants for that relief will be granted to the extent of awarding them a judgment declaring that the defendants’ policy of prohibiting demonstrative prayer in the prison exercise yard of the Bare Hill Correctional Facility does not violate the plaintiffs’ right to religious freedom as guaranteed under article I, § 3 of the NY Constitution and section 610 of the Correction Law.
Plaintiffs are inmates seeking to overturn the defendants’ policy of not allowing group or demonstrative prayer in the recreation yard or gymnasium of the Bare Hill Correctional Facility. Plaintiffs are Muslims and assert that one of the requirements of their religion is that they pray five times a day. They allege that at times this requirement forces them to choose between going to the recreation yard or remaining in their cells and performing their prayers. They assert that they should be allowed to perform demonstrative prayers in the yard and gymnasium, or have guards escort them from the exercise yard to the mosque in an adjoining building in order to permit the prayers. The defendants point out that the plaintiffs are not being prohibited from praying, but merely having the places where they may pray limited. They assert that the policy is rational as the exercise yard is not an appropriate place for religious services. They contend that demonstrative prayer would infringe upon the rights of other inmates, and could lead to altercations. The deposition testimony submitted on their behalf states that requiring guards to leave their normal post in order to escort inmates to the mosque would weaken institutional security.
The plaintiffs’ brief contends that there is a standard under New York State law for determining inmate constitutional claims that differs substantially from the Federal standard, and the New York State test is more favorable to inmates. That does not appear to be the case. Recently, the Appellate Division in Matter of Bunny v Coughlin (187 AD2d 119 [3d Dept 1993]) held that any difference between the State and Federal standards of review is "more verbal than substantive”. The Appellate Division stated the applicable law as follows:
"It is true, as petitioner points out, that the criteria for determining the validity of prison regulations impinging on *977 the State constitutional rights of inmates are couched in somewhat different terms than the standard of review under the parallel provisions of the Federal Constitution. The Federal standard upholds such a regulation 'if it is reasonably related to legitimate penological interests’ (Turner v Safley, 482 US 78, 89). The State standard 'requires the balancing of the competing interests at stake: the importance of the right asserted and the extent of the infringement are weighed against the institutional needs and objectives being promoted’ (Matter of Lucas v Scully, 71 NY2d 399, 406) * * *
"As applied by the New York courts, however, the difference between the State constitutional standard of review of inmate complaints and its Federal counterpart appears to be more verbal than substantive. Thus, the Court of Appeals has expressed its agreement with the United States Supreme Court that correctional authorities are not required to establish that the regulation complained of is the least restrictive alternative for achieving the relevant penological objectives in order to pass constitutional scrutiny (see, supra, at 405-406). Likewise, the Court pointed out that under both Federal and State approaches, 'a measure of judicial deference is to be accorded the judgment of correctional officials’ (supra, at 406). In Matter of Lucas v Scully (71 NY2d 399, supra), the Court of Appeals applied the foregoing level of scrutiny in ruling that the State’s penological interests outweighed what it determined was an actual impingement of the inmate’s interest in free expression. There is no reason to conclude that some heightened level of scrutiny is to be applied here because petitioner’s interest in the free exercise of religion is implicated, rather than that of free speech”.
The plaintiffs have the burden of establishing that the policy under review improperly infringes upon their freedom of religion, and they have failed to do so. Plaintiffs are not being barred from performing demonstrative prayers five times daily. They are merely being limited as to the places where those demonstrative prayers can be performed. They are free to remain in their cells and meet the requirements of their religion. They are being told that they cannot conduct their religious services in the exercise yard. They contend that this is unfair because it forces them to give up some of their recreation time in order to fulfill the requirements of their religion. Life is full of choices. Prison severely restricts an individual’s range of choices. It is the nature of the institution. The defendants have demonstrated a legitimate security *978 interest for the ban on demonstrative prayers in the exercise yard. In their opinion, permitting one religious sect to perform its ceremonies in a place designed for the relaxation and recreation of inmates of all religious persuasions could lead to confrontations. Assigning guards to escort Muslims from the exercise yard to the mosque would leave the yard understaffed at different periods of time. Finally, giving plaintiffs the right to perform their demonstrative prayers in the exercise yard would require giving other religious groups the same rights. The foregoing concerns provide a rational basis for the policy adopted by defendants.
This case illustrates the incongruity of Federal and State policies on the use of public buildings and grounds in the exercise of religious freedom. One of the goals of the Department of Correctional Services is to provide education to inmates (Correction Law § 136). Hopefully, one of the goals of public education is also to educate. Here, the taxpayers are paying for a facility to confine those persons who have chosen to violate society’s laws. The taxpayers also pay for schools to educate our children. It has been held that when six high school students requested the use of a school room to meet as a bible club, the school board was within its right to refuse to permit such an open demonstration of religion upon school property (Trietley v Board of Educ., 65 AD2d 1). Yet, when four inmates seek to use the recreation yard of a prison to publicly demonstrate the prayers of their religion, it is somehow a denial of their constitutional rights when they are prohibited from so doing. As in "Alice’s Adventures in Wonderland”, things are getting "curiouser and curiouser” in the evolution of prisoners’ rights.