OPINION OF THE COURT
Thomas W. Keegan, J.
Petitioner commenced this CPLR article 78 proceeding, seeking a declaration that respondents’ enforcement of their hair length policy (Directive 3083) violates his Federal and State constitutional rights to the free exercise of his religion. Petitioner also seeks reinstatement to his former position as a correction officer with New York State Department of Correctional Services (DOCS), a position which he held from May 1989 until September 1992.
Petitioner is a full-blooded Native American, a member of the Mohawk Nation, and an adherent of the Longhouse religion. In accordance with the Longhouse faith, in which hair length symbolizes spirituality, petitioner stopped cutting his hair in early 1991. In September of 1992, and again in March of 1993, petitioner was dismissed from his position with DOCS for failure to comply with both verbal and written orders to cut his hair to conform with Directive 3083, which states that male correction officers’ hair shall not exceed more than one-half inch below the top of the uniform collar.
In hopes of resolving this matter expeditiously, and avoiding a procedural quagmire, the court summarily denied respondents’ motion to dismiss by order dated June 11, 1993. Nevertheless, a brief exploration of respondents’ objections in point of law provides an appropriate opening to the discussion and determination of the present controversy.
Initially, the court agrees that petitioner’s Federal employment discrimination suit pursuant to 42 USC § 2000e et seq. is not properly before this court because of petitioner’s failure to comply with the statutory requirements of 42 USC § 2000e-5 *326 before commencing his private civil suit, and therefore should be dismissed.
A contrary result is reached, however, in regard to petitioner’s State employment discrimination suit pursuant to Executive Law article 15. By statute, an action in State court is barred by the filing of a complaint with the State Division of Human Rights (Executive Law § 297 [9]; Matter of James v Coughlin, 124 AD2d 728; Scott v Carter-Wallace, Inc., 147 AD2d 33). In the original petition filed on January 22, 1993, petitioner did not claim that respondents’ hair length policy violated his Federal or State rights to freedom from employment discrimination under title VII of the Civil Rights Act of 1964, and the New York Human Rights Law. He did, however, raise these claims in his amended petition dated March 25, 1993. These claims, therefore, are deemed to have been interposed at the time the claims in the original petition were interposed on January 22, 1993. (See, CPLR 203 [f].) In the amended petition, petitioner’s attorneys state that petitioner filed his administrative complaint with the New York Division of Human Rights on or about March 22, 1993. Section 297 (9) of the Executive Law is controlling, and dictates that ”[n]o person who has initiated any action in a court of competent jurisdiction * * * under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section.” Clearly, under this provision, petitioner’s commencement of an article 78 proceeding constitutes an election to proceed in State court, and a waiver of the right to commence an administrative proceeding with the Division of Human Rights, thus, contrary to respondents’ contention, it is not the instant proceeding that is barred. As jurisdiction over the parties has been obtained, the court will convert that portion of this proceeding which involves petitioner’s State employment discrimination claim to an action pursuant to CPLR 103 (c) and direct that this claim be severed and continue henceforth, and that the parties be allowed to expand their pleadings accordingly.
Respondents also claim that this proceeding is barred by the doctrines of res judicata and collateral estoppel because petitioner challenged the grooming standard and his dismissal in earlier grievance and arbitration hearings. This argument overlooks the fact that the petitioner in instituting this article 78 proceeding does not seek to overturn or review the arbitrator’s decision or the outcome of his grievances, but merely *327 seeks a declaration that respondents’ hair length policy violates his State and Federal constitutional rights to the free exercise of his religion, and reinstatement to his former position as a correction officer. That these issues were raised in some fashion does not change the fact that the arbitrator’s findings in the context of a disciplinary case were limited to the interpretation and application of a collective bargaining agreement (see, Alexander v Gardner-Denver Co., 415 US 36; cf., Gilmer v Interstate Johnson/Lane Corp., 500 US 20) and a determination of guilt or innocence. Based on the evidence presented, the arbitrator found that petitioner had no contractual right to expect an exemption from the personal grooming standard in Directive 3083, and therefore had violated section 2.5 of the Employee Manual by failing to comply with a lawful order. Petitioner’s claim in the instant proceeding has its source in both the Federal and New York Constitutions, not in the collective bargaining agreement between the State and his union. (Matter of Valentino v American Airlines, 131 AD2d 6, 8.) It follows, therefore, that the arbitration decision should not be given preclusive effect.
In turning to petitioner’s Federal and State constitutional claims, the court, in its discretion, denies the motion by the New York Civil Liberties Union for leave to appear as amicus curiae, inasmuch as petitioner’s contentions have been fully and ably presented, and the court wishes to avoid the further delay involved in allowing respondents an opportunity to reply.
The question presented is whether enforcement of Directive 3083 violates petitioner’s right to the free exercise of his religion as guaranteed by the First Amendment of the United States Constitution, and by article I, § 3 of the New York Constitution.
Although mindful of the United States Supreme Court’s decision in Employment Div., Oregon Dept. of Human Resources v Smith (494 US 872), and its departure from precedent, and the traditional compelling-interest test of free exercise jurisprudence, this court cannot ignore the New York Court of Appeals long history and commitment to the protection of individual rights and liberties beyond those afforded by the US Constitution, and Federal constitutional law. Given this history and commitment (so ably illustrated by petitioner) and the importance of this free exercise right, it is hard to imagine that New York would not continue to apply a "strict scrutiny” standard of review, and a balancing of the State’s *328 competing interests and the fundamental rights of the individual.
"Although State courts may not circumscribe rights guaranteed by the Federal Constitution, they may interpret their own law to supplement or expand them.” (People v P. J. Video, 68 NY2d 296, 302.) As petitioner urges, both interpretive review of the broad, affirmative language of article I, § 3 of the New York Constitution, and a noninterpretive review of recent New York case law (see, Ware v Valley Stream High School Dist. 75 NY2d 114; Matter of Rivera v Smith, 63 NY2d 501; Matter of Bunny v Coughlin, 187 AD2d 119), and the Supreme Court’s departure from precedent in Smith (supra) (see, People v Scott, 79 NY2d 474, 497) require that this decision be based on "our Constitution, our precedents and own best human judgments in applying them”. (People v Scott, at 506 [Kaye, J., concurring].)
Having decided thus, the court, in applying the least restrictive compelling-interest test, finds, upon the record before it, that the sincerity of petitioner’s religious belief is beyond question. It is respondents’ position, however, that petitioner has failed to demonstrate that he is required to wear his hair long as a matter of religious practice. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.” (Matter of Holy Spirit Assn. v Tax Commn., 55 NY2d 512, 522, citing United States v Ballard, 322 US 78, 86-87.) The evidence presented here shows that petitioner’s expression of his religious belief, which is clearly central to him as a follower of the Longhouse religion, has an inseparable historical, cultural, and spiritual significance among many Native Americans. (See, Teterud v Gillman, 385 F Supp 153, 156.) Since "[n]either the courts nor the administrative agencies of the State or its subdivisions may go behind the declared content of religious beliefs any more than they may examine into their validity” (Matter of Holy Spirit Assn. v Tax Commn., at 521), respondents’ argument must fail. Because petitioner has demonstrated that his refusal to cut his hair is rooted in a sincerely held religious belief, respondents must in turn demonstrate that Directive 3083 serves a compelling interest of the State, pursued by the least restrictive means, and that such interest would be adversely affected by granting an exemption to petitioner. (Ware v Valley Stream High School Dist., 75 NY2d 114, 124, supra.)
*329 Although respondents claim that uniformity is essential in promoting discipline and order among the ranks of correction officers, the differing hair length standard for women officers and an allowance for beards on those officers that were hired prior to 1990, belie that strict adherence to this policy, without exception, is necessary to satisfy this interest. The respondents, in an attempt to support the constitutionality of their hair length policy, pepper their arguments with language found in Goldman v Weinberger (475 US 503). In Goldman, the Supreme Court applied a deferential standard of review in upholding a military regulation which essentially prohibited the wearing of a yarmulke by an orthodox Jewish officer. However, respondents ignore several critical distinctions— DOCS is not the military, the "subordination” of petitioner — a civilian — is not essential to DOCS’ "esprit de corps”, and the policies of DOCS do not evenhandedly regulate hair length.
Neither is respondents’ speculative and conclusory concern for the safety of the individual in this instance sufficiently compelling to override the religious beliefs of petitioner. Obviously, less restrictive alternatives exist which would allow the petitioner to exercise his religion without interfering with DOCS’ interests. (This court, in refusing to enter the wig fray, notes that the notice of discipline dated March 4, 1993, dismissing the petitioner from service, cites petitioner’s refusal to obey a direct written order to cut his hair.)
Simply put, respondents have failed to show how their interests could not be achieved, or how they would be adversely affected by granting an exemption from Directive 3083 to petitioner, who has unreservedly agreed to pin his hair up, and/or wear a hair net. (People v Lewis, 68 NY2d 923.)
Accordingly, the court finds that the hair length policy found in DOCS’ Directive 3083, as enforced against this petitioner, violated his right to the free exercise of his religion as guaranteed by article I, § 3 of the New York Constitution.
Respondents are hereby enjoined from further enforcement of their hair length policy against petitioner and directed to reinstate petitioner to his former position as correction officer at Riverview Correctional Facility, with payment of his salary, and all other benefits from September 25, 1992 until the date of his reinstatement.