[615 NYS2d 470]

In the Matter of RAYMOND T. ROURKE, Respondent, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Appellants.

Third Department, July 28, 1994

APPEARANCES OF COUNSEL

*G. Oliver Koppell, Attorney-General,* Albany *(Martin A. Hotvet* and *Peter H. Schiff* of counsel), for appellants.

*Gary J. Simson* and *Glenn G. Galbreath,* Ithaca, for respondent.

*Young, Stockli & Rowe,* Albany *(John P. Stockli, Jr.,* of counsel), for New York Civil Liberties Union, *amicus curiae.*

**OPINION OF THE COURT**

YESAWICH JR., J.

Petitioner, a full-blooded Native American and member of

the Mohawk Nation, was employed by respondent Department of Correctional Services (hereinafter the Department) as a correction officer from 1989 until his termination in 1993. In early 1991, petitioner, who was then assigned to Riverview Correctional Facility, became a practitioner of the Longhouse faith, the traditional religion of the Mohawks, and in accordance with the tenets of that faith ceased cutting his hair.

In the summer of that year, respondent Howard Maneely, then Deputy Superintendent of Security at Riverview, directed petitioner to cut his hair in order to bring it into conformance with the mandates of Department Directive No. 3083 (hereinafter the Directive), which prescribes acceptable hair lengths and styles for correction officers. In particular, male officers are not permitted to wear their hair longer than one-half inch below the top of the shirt collar in the back; female officers may wear their hair longer, but must pin it up or otherwise style it so that it meets the same length requirement while on duty. Petitioner refused, explaining that his religious convictions prevented him from complying with the Directive. Maneely then ordered petitioner to wear his hair in a pony tail, which he did, apparently without incident for over a year.

In September 1992, respondent William Costello, newly appointed Deputy Superintendent of Security at Riverview, again ordered petitioner to cut his hair, and again petitioner refused for the same reason. Shortly thereafter, petitioner received a notice of dismissal and requested arbitration pursuant to his union's collective bargaining agreement. Following a hearing, the arbitrator found that wearing long hair was not a "requirement" of the Longhouse faith and that the Department had offered, as a compromise solution, to permit petitioner to return to work if he wore a wig.* Although the arbitrator found petitioner guilty of refusing to obey a direct order, albeit not "willfully", dismissal was held to be too severe a penalty given that petitioner had not had an opportunity to reform his behavior through progressive discipline; a 21-day suspension was ordered.

Upon returning to work in March 1993, petitioner was presented with a written order to cut his hair, which he refused in writing. The following day he was given a second

---

* Although respondents place considerable weight on the purported availability of a "wig option", the arbitrator's finding that such an option had been offered to petitioner is not supported in the record; as Supreme Court noted, the dismissal notice and the written order that petitioner refused to comply with both unmistakably required that he cut his hair.

notice of dismissal, which was upheld after arbitration on the ground that petitioner had "deliberately disobeyed an order".

By this combined CPLR article 78 proceeding and action for a declaratory judgment, petitioner seeks reinstatement to his position, back pay, a declaration that enforcement of the hair-length policy against him was unlawful and an injunction barring similar action in the future. Finding that the Department's actions were violative of petitioner's right, under the NY Constitution, to the free exercise of his religion, Supreme Court granted the relief sought. Respondents appeal.

Respondents' first contention, that the outcome of the arbitration proceedings precludes any relief in this forum, is unavailing. Neither arbitrator addressed the underlying validity of the Directive; their decisions were limited to questions respecting whether petitioner had violated the provisions of the contract itself, and if so, whether the penalty imposed was appropriate. Moreover, the constitutional issues raised herein could not have been addressed in arbitration for, as the collective bargaining agreement makes clear, the arbitrators' authority is expressly limited to "the application and interpretation" of that agreement.

This is not a situation where the terms of the contract may be reasonably construed as constituting either an agreement to arbitrate all disputes arising out of petitioner's discharge *(compare, Binghamton Civ. Serv. Forum v City of Binghamton,* 44 NY2d 23, 29), or a waiver of his right to pursue a constitutional challenge in an appropriate judicial forum. Nor can it be said, as was found to be the case in *Clemens v Apple* (65 NY2d 746, 749), that petitioner is attempting to litigate the same issue as that previously resolved through arbitration *(see, Matter of Halyalkar v Board of Regents,* 72 NY2d 261, 268 [only those issues actually determined in prior proceeding are subject to collateral estoppel]). Thus, this proceeding is not barred by petitioner's former arbitration, which dealt solely with his contractual rights *(see, Matter of Valentino v American Airlines,* 131 AD2d 6, 9).

As to the merits of petitioner's claims, we agree with Supreme Court that respondents have failed to demonstrate any legitimate State interest that outweighs petitioner's right to practice his religion. The evidence before Supreme Court, including affidavits from a Mohawk religious leader, substantiate the sincerity of petitioner's religious belief in the need to keep his hair long. More specifically, the record evidence is

that although not all adherents to the Longhouse faith wear their hair long, it is believed that the length of one's hair reflects one's spirituality, and is a symbol of religious commitment and a link with the spiritual world. Supreme Court found petitioner's settled religious beliefs in this regard to be sincere and we find no reason to differ *(see, Thomas v Review Bd., Ind. Empl. Sec. Div.,* 450 US 707, 715-716).

Constraining petitioner to choose between following the precepts of his religion, as he interprets them, and working as a State correction officer substantially encumbers his right to freely practice his religion *(see, supra,* at 716-718), thus placing the burden upon respondents to demonstrate that requiring petitioner to comply with the policy furthers a legitimate State interest which outweighs the negative impact upon his religious freedom *(see, Matter of Rivera v Smith,* 63 NY2d 501, 512; *Matter of Bunny v Coughlin,* 187 AD2d 119, 121, *appeal dismissed* 82 NY2d 679). To justify their insistence on undeviating compliance with the Directive, respondents point to several interests ostensibly served by the grooming standards imposed upon correction officers. They maintain that long hair imperils prison security because it can be grabbed by inmates, giving them an advantage in a physical confrontation; that uniformity in grooming enhances the esprit de corps and discipline of correction officers; that disuniformity is perceived by inmates as a weakness, encouraging challenges to authority; and that a uniform, disciplined staff provides a good model for the inmates. Examination of the Directive itself demonstrates, however, that respondents have not deemed any of these interests worthy of plenary protection. Any need for officers to wear their hair short, to avoid having it seized, is belied by the fact that female officers are permitted to have hair of any length, if it is tied or pinned up while on duty (petitioner has offered to do the same). Nor have respondents found the necessity for uniformity—which furnishes the predicate for the remainder of the reasons advanced for exacting universal compliance with the requirement at issue—to be absolute. For example, among the male officers, those hired prior to 1990 are permitted to wear beards while others are not, and any officer may decide to sport a mustache; female officers may choose to wear skirts or culottes in place of slacks, and, paradoxically, may have short or long hair.

Perhaps the most unassailably convincing evidence in this case is the fact that petitioner himself was allowed, by his former supervisor, to wear his hair long for 14 months, and in

all this time respondents are unable to point to a single incident illustrative of any problem with security or, for that matter, of any problem with morale or the correction officers' "esprit de corps" upon which they rely so heavily. Given the foregoing, we agree with Supreme Court that respondents have simply not shown that any legitimate interest will be advanced by refusing to grant petitioner an exemption from the hair-length policy, or that a hearing will shed any further light on the material facts upon which this determination is based.

MIKOLL, J. P., MERCURE, CREW III and PETERS, JJ., concur.

Ordered that the order is affirmed, with costs.